May it please the court, my name is Kevin Hohalter and I'm here representing appellants Michael and Tara Hellickson and their real estate companies. I would like to reserve four minutes for rebuttal. I'll watch my own time. The issue today is under Washington law can an insurer contract around the statutory requirement of materiality and then rescind a policy after breaching its duty to defend. In Washington the duty to defend is paramount. It is a strong public policy that has been clearly delineated in in a long line of cases. The Washington Supreme Court would not allow an insurer to contract around this duty by writing provisions into its applications and policies that would then enable it to rescind based on trivial misstatements. Trivial misstatements? Weren't these pretty serious misstatements? They knew about at least ten investigations going on when Mrs. Hellickson filled out that form. Your Honor, that's correct. There were, the Hellickson's had received at least ten letters from the Department of Licensing. So how could she answer the questions the way she answered the questions without affirmatively and explicitly and Well, Your Honor, Tara described in her declaration her understanding of the question and her understanding of the situation with the DOL. She said, I believe the insurance application called for disclosure of actions that had actually been filed. And so she didn't think that an investigation by the DOL was a relevant answer. Well, question 11 in the supplemental application used the word investigated, investigatory proceedings. Yes, Your Honor, it did. But apparently Tara Hellickson did not understand the full implications of the question. She said also, I thought the issues with the Department of Licensing had been resolved. So by her understanding of the question, it was asking about actions that had been filed. The DOL actions had not been filed. They were investigations, which on her reading of the letters, she thought that was the end of it. Well, whatever she thought, what's your, on a conceptual level, what's your best case that would say we look at bad faith on duty to defend before we look at whether the insurance company has a valid ground for rescission? Well, Your Honor, there's no Washington State case that directly addresses that question. But I would say in the duty to defend case law, the court has, has explained that the duty to defend arises when a complaint is under the policy. And so the duty arises at the time of the complaint. In this case, at the time the statement of charges was brought. Then Hellickson's tendered that claim to Tudor. And Tudor, under Washington law, at that moment had that duty to determine whether it should defend or not. And under Washington law, the insurer may not look outside the complaint to deny its duty to defend. It may not resolve arguable questions of fact or law in order to deny its, its duty to defend. Yet that's exactly what Tudor did. Tudor looked outside the statement of charges, did research on the internet, found out about additional allegations of misconduct by the Hellickson's. Never contacted the insurer side of the story to understand how they had answered those questions. And on arguable facts, rescinded the policy some two and a half, three months after the claim had been tendered. And so it's the, the paramount placement of, of the duty to defend that requires us to look at that first. It happened first. There was a policy in place on that day. And ultimately, the, the factual issues surrounding materiality and intent to deceive, there was never clear evidence in Tudor's favor on those issues. And so there was always this possibility that under Washington law, they're required to provide a defense. Now they have the option to reserve their rights while they proceed with that defense. They have the option of bringing a declaratory judgment action so that those arguable questions of fact can be determined by a court. But that's not what they did. They, they failed to even contact the Hellickson's for 40 days. When they did contact the Hellickson's, they said basically, hello, I'm your point of contact with Tudor Insurance Company. We're investigating coverage. They didn't say anything about providing a defense. And they did, they did say we reserve our rights. But they breached that duty. The, the case of Ellis versus William Penn, Life Assurance Company, illustrates for this court what the Washington Supreme Court would be likely to do with this case. In the Ellis case, the, the court applied the applied coverage by estoppel, even though the insureds in both of those policy applications. Yet, in order to protect an important public policy, the court applied coverage by estoppel and, and held the insurance companies liable on the policy. It wasn't an important part of the Ellis analysis, the fact that it was a life insurance policy and to do anything otherwise would have affected an innocent beneficiary of that life insurance policy, which distinguishes it from this situation, for that and maybe other reasons. Your Honor, I, I don't know that that was made clear in, in the court's opinion. You are correct about the facts, that, that it was life insurance and, and the beneficiaries ostensibly were, were innocent parties. Well, but the, but the same court in the Wickswick case later said, this is what we meant in Ellis and that's what Ellis turned on and Ellis did not overrule Cox. So, anyway. Your Honor, I, I would simply say that if, if this court is not satisfied that there is sufficient evidence to find on, in, in Hellickson's favor on that issue, that it would be appropriate to certify to the state court to, to decide, to reconcile this duty to defend case law with the... But none of the duty to defend cases has this level of bad faith at the very beginning of the insurance contract, does it? And what, what, what, why is there any reason to believe that the Washington courts would, could, would say anything different than that bad faith of this nature is the end of the analysis? Well, Your Honor, I, I have to disagree with you on, on the degree of the bad faith. In this case, the, there are factual issues on issues of both particularly in, in Cox and, and the other cases where the, the state supreme court said a bad faith action is, is lost by, by the insured's bad faith. The facts were clear in, in all of those cases. Here we have, we have disputed facts. The district court judge, in our case, basically decided the issue of intent based on a presumption. And the Washington courts have made clear that a presumption is not evidence. It simply sets forth who has to come forward with evidence first. The Helixons did come forward with evidence. We have the statements of Tara Helixon explaining her understanding, which, under the Kay and Houston cases, the applicant's honest belief and understanding of the questions are relevant on the issue of intent. In addition, we have the partial answer that Helixons provided, that they had been fined by the multiple listing service, appealed that, and the fines had been dropped or reduced. That partial answer puts Tudor on notice that there were underlying facts. There, that there had been an investigation and discipline. And those are the same underlying facts that gave rise to the investigations by the Department of Licensing. But at the same time that she gave that partial answer, didn't that actually support the notion that she was misleading them? Because she had received three letters from the department previously about, before filling out those applications, saying that all these other cases were under investigation too. Your Honor, it's a matter of an inference here. And on summary judgment, an inference needs to be drawn in favor of the non-moving party, which on the issue of rescission, that's the Helixons. And it's possible for a reasonable fact finder to infer from that partial answer that Helixons were not trying to hide anything. They gave a partial answer which revealed a part of these issues. And had Tudor inquired further, they would have discovered the full extent. This is analogous to the Rowley case in which an applicant disclosed only partial information about his back condition. And the insurance company later attempted to rescind for misrepresentation. But the court held that that partial answer put the insurance company on notice and showed his willingness to truthfully answer. Had there been further investigation, the full information would have come out. Mr. Holhofer, you've only got about three minutes left. Did you want to hold some time for rebuttal argument after Mr. Goldstein or just proceed? I would like to reserve my time unless there are additional questions for me right now. Hearing none right now, why don't we hear from Mr. Goldstein and we'll bring you back. Thank you, Your Honor. By the way, I'm not wearing my glasses today and things are a little fuzzy beyond the podium. But is that Mr. Feldman over at counsel? Well, I should say welcome to Mr. Feldman, too. Good morning, Your Honors. The evidence in this case on the rescission issue is simply overwhelming of misrepresentation, which establishes under Washington law the intent to deceive. There were at least ten letters sent to the Hellickson's advising them of investigations into their conduct because of complaints from numerous clients. Not only did they advise them of the complaints, but each letter said that grounds may exist to pursue administrative actions for possible misrepresentations, negligence, or malpractice. Now, if there is any question still about the significance of these letters, six of them even went so far as to say we're forwarding these files to attorneys for further consideration. None of this was disclosed. And the applications were very specific. The first application asked for the disclosure of any act, error, or omission, or other circumstance that might reasonably be expected to be the basis of a claim. Here we have ten people raising complaints. The second application is even more on point here because it specifically asks whether there are investigations, because after all, one of the coverages here is for some defense costs for investigations. Six of those letters said not only, all ten said they were being investigated, six said they were also being forwarded to attorneys. Now, in light of those uncontradicted facts, to try to create a question of fact from the Tara Helixson declaration simply doesn't work. It is similar to the blanket denials that the Washington Supreme Court has rejected. What is the theory for the claim that you refuse to defend in bad faith? What is their theory? Yeah, what is their theory? Their theory is that, and I can get to that argument, but their theory is that you always- I was trying to mesh the two.  Even if the policy is voided ab initio. And I think that that is bad policy, and it's not supported by any Washington law. Let me ask you on that point, and it's further to Judge Schroeder's question. The converse of what I asked Mr. Pohalter, what's the best case that you have that would indicate that we should look at rescission first before bad faith? Well, I think you look at rescission first because if you win on rescission, the policy is void ab initio. And void ab initio, by its very definition, means that the policy never existed. There can't be a duty to do something under a policy that doesn't exist. The other issue is the bad public policy issue, that that would be rewarding insureds who deliberately defraud their own insurance company, and that's a bad precedent. And in light of the Washington Supreme Court's ruling on other issues, I just can't imagine them doing that. Right, and in this case, the breach of the duty to defend comes in the very matters that were not disclosed in the first place. Exactly, and that gets to also the materiality issue, which is another issue that they've raised. The Cutter Court, I think, did a very good explanation of materiality. And what the Cutter Court said was that when you misrepresent on the very matter of ordering, that is materiality as a matter of law. There's a presumption of materiality in such a situation. And in the Cutter case, it was financial. In this case, it was investigations, was the very specific one that was asked and not disclosed. So I think materiality is presumed. And this isn't like, for example, I think the issue of materiality comes up if something is obviously not important. If somebody misrepresents their middle name because they don't like it, well, that's not material to the decision. But when you're misrepresenting the very things that are being asked, that are being told to you, this is material, this is important to us. We want to know this information. And by the way, the questionnaire asked not just what is your knowledge, but it said you have conducted a reasonable inquiry. And that's key in this case on the rescission issue too, because Tara Hellickson is representing not just herself, but multiple companies that are seeking coverage. So it's not just what she knows, it's what they all know. And she had a duty and she swore under oath that she conducted a reasonable inquiry. And yet despite that, didn't disclose any of these ten investigations and complaints. And on the issue of the bad faith, I would like to talk a little bit about the Ellis decision. I think that, Judge Friedman, that you hit the nail on the head on that. But I think it's important to realize that the Ellis case is not a duty to defend case. So it's a little bit ironic to use it to support the argument that there's a duty to defend, and that wasn't even the issue in that case. The issue in that case had to do with a life policies coverage requirement that if you're going to replace a policy, there's a regulatory scheme under Washington law. You have to give certain information to the applicants. And they didn't do it, and as a result, the argument is third parties are harmed who are innocent. Of course, here we don't have innocent third parties. We have the very people who failed to disclose this critical information, trying to get the benefit of the policy. And the reason I say that I think the Supreme Court, I don't think there's any question about what they would do. And admittedly, there is no case directly on point. All the duty to defend cases cited by the appellant are cases where there's a policy. There's no question there's a policy in existence. The only issue is based on the allegations and the complaint. Is it covered? All those sorts of arguments you get in coverage cases that I'm sure you've seen on many, many occasions. But we cited three different cases. Frankly, I think there are more. Public Employees v Kell, Kim v Allstate, and Tornetta v Allstate. All three of those cases said when the insured acts in bad faith, when the insured misrepresents, when the insured doesn't disclose information, when the insured discloses false information, they cannot sue for bad faith or Consumer Protection Act violations, period. I can't think of a clearer example of bad faith misrepresentations than not disclosing ten investigations, ten complaints, six of which were forwarded to attorneys. And saying, well, okay, that is an example of bad faith on the part of the insured. And under that line of cases, our Supreme Court, I do not believe, would even consider imposing a duty to defend. The public policy is just a bad precedent. On the rescission issue, the two cases that appellant is relying on, Rowley and Kay, just don't have any applicability for the following reason. What those cases stand for is there must be credible evidence to create a question of fact on intent. And for example, in the Rowley case, and both of these cases, by the way, are life policies, which again has a different not only regulatory scheme, but also falls under a different part of the statute on rescission. Subsection one applies to our situation, subsection two applies to life policies. But life policies are like that. There's a lot of information about medical situations that people have to fill out and try to think back of, okay, when did I have that back problem? Was it four years ago? Was it a serious? It's difficult. And here, the policy was rescinded for three reasons. Cervical and lumbar degeneration, the claim wasn't disclosed. Whether he ever had depression, the claim wasn't disclosed, and drug use wasn't disclosed. And there were questions of fact based on the evidence presented on all three of those. The court said there's a question of fact as to whether he even did disclose the degenerative disc problem. There was a question of fact whether he even ever had depression, one of the very reasons the policy was rescinded. And there was a question of fact in dispute as to, in terms of the drugs,  was there a question of fact in dispute as to whether he had depression or not? In the K case, we had similar questions of fact. But what I thought was interesting about K, and this comes back to what you were mentioning, Judge Schroeder, is that the K case found that in every case in which the Court of Appeals, the Supreme Court in Washington, had upheld a rescission, the applicant had concealed the existence of the disease that he or she was suffering from at the time of the application. And to me, that's directly applicable to our case, where what is being concealed, what is being hidden, is the very thing that is being asked about. And in particular here, the focus was on that in the investigations, which is so important, and no matter what, these declarations do not deny that all ten letters were received, and that all ten letters involved in investigations. And that was directly on point, and I think applicable to the K decision. Unless, Your Honor, you have any further questions, I will actually break precedent here and finish early. I know that's unusual. We'll do that, and we appreciate it. If there are no questions from Judge Schroeder or Judge Friedman, we'll let you go. Now, Mr. Holwalter, you've got some rebuttal time. Thank you, Your Honor. I'd first like to address Judge Schroeder's question dealing with the bad faith. The bad faith here involved Tudor's failure to respond and ever contact Helixson's, render a decision on whether or not to defend. Their failure to make a reasonable investigation, and their unilateral decision to resolve questions of arguable fact in their own favor, instead of in the favor of the insured, which is the rule in Washington, and thereby deny defense, that's the bad faith. Now, Tudor says- What do you mean? Should they have tendered the defense as a matter of law without At the time- Regardless of anything? I'm not- At the time the duty arises, when the complaint is brought, when it's tendered to the insurance company, Washington gives the insurer ten days to make a response and 30 days to conduct an initial investigation and make that decision whether or not it's going to defend. And in doing so, it's required to view everything in the light favorable to the insured in order to provide that defense. If Tudor had followed what Washington courts require, it would have provided defense under a reservation of rights saying, we think that there are grounds for rescission, but we'll bring that to a court to decide. They would bring a declaratory judgment action on that issue, and if the court ultimately decided that rescission was proper, then the remedy would be to place Tudor in the position it would have been in had there been no policy, in which case it could have recouped its defense costs. That's not what they did. They didn't follow the course prescribed by Washington courts, and in doing so, breached their- How would it have recouped its defense costs? Do you mean like by suing the Helixsons or by getting an order from the court? Yes, by getting an order from the court, which to put Tudor in the position it would have been in had there been no policy, that would be part of that remedy. Had to get it back from the- Get it back from the Helixsons. Helixsons. Yes. And if the Helixsons didn't have ability to pay it, I guess they'd be out. Just out. Well, I suppose that would be true, Your Honor, yes. I see my time is out, so- Okay. We appreciate your argument. Let me say it's a very interesting case with interesting issues. It's very well presented on both sides in the briefing, and the oral arguments are excellent. So we take this case under submission and give you a ruling in due course. That concludes our argued cases today with Tudor submitted. We also have a case, Bach-Mahia versus Fulmer, on the calendar for today. That one is submitted on the briefs. And so we will adjourn until tomorrow. Thank you. All right, this court is for dismissal, and again, adjourned.
judges: Friedman, Schroeder, Gould